IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

JASON KOKINDA,                              )
                                            )
                                            )
            Plaintiff,                      )
                                            )
        vs.                                 )
                                            )
PENNSYLVANIA DEPARTMENT OF                  )
CORRECTIONS, DR. PILLAI,                    )
(OFFICIAL/PERSONAL CAPACITY);              )
CHRISTOPHER H. OPPMAN, MBA, MHA            )          2:16-CV-01457-MRH-CRE
(OFFICIAL/PERSONAL CAPACITY);              )
PATRICIA STOVER,                            )
(OFFICIAL/PERSONAL CAPACITY);              )
IRMA VIHLIDAL, (MEDICAL                     )
DIRECTOR) (OFFICIAL/PERSONAL               )
CAPACITY); MARK DIALESANDRO,               )
DSCS (OFFICIAL/PERSONAL                     )
CAPACITY); ROBERT GILMORE,                  )
(SUPERINTENDENT)                            )
(OFFICIAL/PERSONAL CAPACITY);              )
JOHN DOE #1, CHCA                           )
(OFFICIAL/PERSONAL CAPACITY);              )
SHELLEY MANKEY, (UNIT MANAGER)             )
(OFFICIAL/PERSONAL CAPACITY);              )
AND  CORRECT CARE SOLUTIONS,               )
(OFFICIAL/PERSONAL CAPACITY);              )
                                            )
            Defendants.                     )
                                            )

## REPORT & RECOMMENDATION

Cynthia Reed Eddy, United States Magistrate Judge.

## I. RECOMMENDATION

For the reasons explained below, it is respectfully recommended that all three of the

pending motions to dismiss (ECF Nos. 53, 55, 57) be granted and that the third amended complaint

(ECF No. 51, hereafter, "complaint") be dismissed with prejudice.

## II. REPORT

## A. BACKGROUND

Plaintiff Jason Kokinda is a former state prisoner and *pro se* litigant.[1]  In this case, he claims that on September 30, 2014, when he was housed in the mental health block of SCI-Greene, he submitted a request slip to the Corrections Health Care Administrator, Defendant Irma Vihlidal ("CHCA Vihlidal"), containing an Inmate Disability Accommodation Request Form seeking numerous accommodations for his alleged disabilities of Obsessive Compulsive Disorder and Hallucinogen Persisting Perception Disorder ("OCD/HPPD"), which he acquired from LSD use as a teenager.  (Compl. at ¶¶ 1-2).  He noted in the request slip that his OCD/HPPD "results in agitating ego-dystonic dreamlike visual thoughts that are created by stressful environment, and perception of things being contaminated with LSD; causing disorientation if [he] fails to effectuate specific cleaning rituals."  (*Id.* at ¶ 2).

According to Plaintiff, the stressful environment of the prison exacerbated his OCD/HPPD and, consequently, prevented him from having a cellmate, required him to constantly wash his hands and surrounding environment with certain low residue soaps high in lye, prevented him from touching anything that he felt was contaminated by others (including prison officials), and required him to make sure his bed sheets were sterile.  (*Id.* at ¶¶ 3-8).  In his accommodation request form, he stated that he needed the following: a residue-free "state soap," to be housed on the less stressful K-Block, to be permitted to shower at night, to be able to clean adequately, to be treated under

---

[1]    In addition to the present action, Plaintiff has filed several other civil rights actions in this Court, all of which have been assigned to the undersigned for pretrial proceedings.  *See* 2:15-cv-179 (abandoned by Plaintiff); 2:15-cv-1593 (currently stayed and administratively closed while Plaintiff seeks reconsideration from the Court of Appeals); 2:16-cv-5 (pending); 2:16-cv-1303 (pending); 2:16-cv-1580 (pending); 2:17-cv-217 (stayed and administratively closed while Plaintiff pursues a petition for writ of certiorari with the Supreme Court).

more relaxed policies, to be able to direct the order that prison officials search his cell, and to be free from dealing with other rigidly performed pressures imposed in connection with his confinement at the prison. (*Id.* at ¶¶ 10-11). CHCA Vihlidal responded that Plaintiff already has a single cell, that his request for state soap should be made to Unit Manager Shelly Mankey ("UM Mankey"), and that his request for being housed on the K-Block was being determined. (*Id.*at ¶ 12).

On October 10, 2014, Plaintiff sent a second request slip to CHCA Vihlidal, stating that he checked with UM Mankey and was told by her that, contrary to CHCA Vihlidal's response to his prior request slip, the state soap must be requested through an ADA accommodation request. (*Id.* at ¶¶ 13-14). He also advised CHCA Vihlidal that her prior response did not adequately address his requests for nightly showers and more relaxed policies, including his request to dictate the order that the prison officials search his cell, noting that one particular malicious cell search conducted by the officials caused him to spend at least one month cleaning his cell until his hands were raw and bleeding. (*Id.* at ¶¶ 14-15). He stated that the soap issue prevented him from reading the Bible and playing the keyboard, and that the showers/bedding issue resulted in development of swimmer's ear. (*Id.* at ¶¶ 17, 23). In addition, this second request slip stated that the laundering policies for blankets and coats were inadequate, resulting in Plaintiff not being able to use them, which caused him to catch colds at night and prevented him from freely participating in the yard when it was cold outside. (*Id.* at ¶ 16). Because his lack of control over his environment in the prison magnified his OCD/HPPD symptoms, he sought immediate transfer to a lower security prison that does not use "misanthropic psychological adversity techniques as a form of mind-

control security." (*Id.* at ¶¶ 19, 22).[2]  On October 20, 2014, CHCA Vihlidal denied all of Plaintiff's requested accommodations.  (*Id.* at ¶ 24).

The complaint also asserts that Dr. Pillai, a treating physician at SCI-Greene, should be held liable for "not recording nor reporting the severity of the 'stress-induced symptoms'" and not "helping [him] obtain ADA accommodations." (*Id.* at ¶ 42).  Dr. Pillai allegedly "denied [Plaintiff] handicap-related medical services altogether; by not even providing any treatment for his severe OCD/HPPD at all, whatsoever." (*Id.* at ¶ 44).  In fact, rather than providing treatment, Plaintiff claims that Dr. Pillai "belittled" his conditions, acting as if "it was not even a substantive illness; despite how burdensome it was." (*Id.*).  Plaintiff claims that since his release from prison, he has learned that his symptoms could have been properly treated with SSRI antidepressants,[3] and he notes that his use of "inexpensive nonmedicinal [herbal] treatments like Inositol and Ginseng . . . have been extremely effective in reducing his stress since he began taking them" in the beginning of 2017.  (*Id.* at ¶ 45).

The complaint does not contain any specific factual allegations against the following supervisory Defendants: Christopher H. Oppman, Patricia Stover, DSCS DiAlesandro, and Superintendent Robert Gilmore.  Instead, it only asserts that they should all be held liable because

---

[2]    The complaint also asserts that Plaintiff requested that CHCA Vihlidal provide him a "No Soy" diet.  (Compl. at ¶ 23).  This issue, however, is already the subject of a different lawsuit that Plaintiff is pursuing in this Court.  *See* 2:16-cv-1303 (ECF No. 33) (complaining he was denied "the non-standard therapeutic 'No Soy' diet he required" from September 3, 2014 until his release on November 1, 2015).  Thus, because his "No Soy" allegations are beyond the scope of the present action, they will not be discussed further herein.

[3]    SSRI stands for selective serotonin reuptake inhibitors.  According to the Mayo Clinic, SSRIs are not only the most commonly prescribed antidepressants, but are also used to treat other conditions, such as anxiety disorders.  http://www.mayoclinic.org/diseases-conditions/depression/in-depth/ssris/art-20044825 (last accessed 8/25/2017).

of their supervisory roles within the DOC.  (*Id.* at ¶¶ 38-41).  In addition, the complaint contains no factual allegations against the medical contractor, Correct Care Solutions ("CCS"), but instead seeks to hold it liable for failing to ensure that prisoners with disabilities are properly accommodated with flexible policies and for failing to ensure that prisoners are not fully denied handicap-related medical services.  (*Id.* at ¶ 37).

Moreover, the complaint claims that all of the above-captioned Defendants are liable for conspiracy due to their purported participation in a "secret unconstitutional policy of greed (generating profits at the expense of prisoners' health and lives), above any sense of morality or conscience."  (*Id.* at 38-41, 43, 50, 59-66).  Plaintiff believes that all of his requested accommodations were denied as a result of this secret unconstitutional policy of greed.  Thus, Plaintiff asserts that Defendants intentionally put him into a stress-induced environment, knowing it would exacerbate his OCD/HPPD.  (*Id.*at ¶ 9).  All of the Defendants allegedly looked for Plaintiff's weaknesses by talking to confidential informants and going through his phone calls, request slips, and grievances for purposes of using "the psychological stressors to traumatize [him] through adversarial psychology techniques . . . carr[ied] out under the guise of security."  (*Id.* at ¶ 33).  They did this, Plaintiff claims, in retaliation for his complaints in grievances about abusive prison conditions at SCI-Greene.  (*Id.*).  As a result of Defendants' purported retaliations, and due to his symptoms from his OCD/HPPD, Plaintiff was allegedly "forced . . . to launder his clothes obsessively in his cell basin, and wash his hands obsessively, making his throat sore from laundry detergent being stuck in clothing, and his hands sore and scalded from washing so much; consuming most of his day with hard obsessive ritual cleaning and typing, freezing at night from not being able to launder his blanket."  (*Id.* at ¶ 9).

All of the Defendants have responded to the complaint by filing three motions to dismiss. Specifically, CCS and Dr. Pillai have each filed their own motions, (ECF Nos. 55, 57), and all of the other Defendants – the Pennsylvania DOC, Oppman, Stover, Vihlidal, DiAlesandro, Gilmore, and Mankey ("Commonwealth Defendants") – have jointly filed a motion, (ECF No. 53). The motions have been fully briefed, (ECF Nos. 54, 56, 58, 62, 69, 70, 71),[4] and are ripe for recommendation.

### B. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted). When analyzing a motion to dismiss, it is appropriate to separate the factual allegations from allegations that merely recite the legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. *Id.* at 210-11. Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

[4] The Court notes that ECF No. 71 is not actually a brief, but rather is a motion filed by Plaintiff seeking to quash Dr. Pillai's reply brief "for being procedurally inappropriate, digressive, and frivolous." This motion is baseless and will be denied by separate Order, although the Court will construe it herein as if it was filed as a sur-reply brief.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Moreover, because Plaintiff is proceeding *pro se*, the Court will accord him an even more liberal reading of the complaint, employing less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519 (1972).

## C. DISCUSSION

At the outset, and as the Court has already noted in many of Plaintiff's other civil actions in this judicial district, the following claims should be summarily dismissed from the complaint: (1) the §§ 1983, 1985(3), and 1986 claims against the DOC and the individual Commonwealth Defendants sued in their official capacities because they are immune from these claims pursuant to the Eleventh Amendment; (2) the § 1985(3) conspiracy claim against all of the Defendants because Plaintiff "does not . . . belong[] to a class within the meaning of § 1985(3)," given that "[h]is contention that 'mentally ill prisoners,' 'litigious prisoners,' prisoners 'exercising constitutional rights,' or 'handicapped persons' are suspect classes is simply without merit"; (3) the § 1986 conspiracy claim because the underlying § 1985(3) conspiracy claim on which it depends is not viable; and (4) the claim under Title II of the ADA, 42 U.S.C. § 12132, against all of the Defendants except for the DOC. *See* 2:15-cv-1593 (ECF Nos. 6, 12, 25); 2:16-cv-5 (ECF Nos. 18, 20, 36); 2:16-cv-1303 (ECF Nos. 5, 7, 50); 2:16-cv-1580 (ECF No. 18); 2:17-cv-217 (ECF Nos. 10, 14); *see also Kokinda v. Pa. Dep't of Corr.*, 2016 WL 5864890 (3d Cir. 2016). The Court will now address all remaining claims, beginning with Plaintiff's claims asserted under 42 U.S.C. § 1983.

### 1. Personal Involvement under §1983

Section 1983 is not itself a "source of substantive rights but a vehicle for vindicating claims conferred by the U.S. Constitution or federal statute." *DiBella v. Borough of Beechwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted).  The complaint asserts that all Defendants are liable under § 1983 for violations of the First, Eighth, and Fourteenth Amendments.  Before addressing the various elements of those causes of action, several Defendants must be dismissed from the case because the complaint does not sufficiently plead that they were personally involved in any of the events at issue in the complaint.

"In order to prevail on a § 1983claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005).  In other words, each defendant "must have personal involvement in the alleged wrongdoing." *Rode v. Dellacriprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Id.* As the Commonwealth Defendants correctly assert, the complaint contains insufficient allegations of personal involvement with respect to Oppman, Stover, DiAlesandro, Gilmore, and Mankey.  (ECF No. 54 at 13-15).

The only factual allegation against Mankey is that she responded unfavorably to Plaintiff's written request for state soap.  A defendant's failure to respond favorably to a request slip, however, does not amount to personal involvement within the context of § 1983. *See Rode*, 845 F.2d at 1208; *Mincy v. Chmielwski*, 508 Fed. App'x. 99, 104 (3d Cir. 2014); *Pressley v. Beard,* 266 Fed. App'x 216, 218 (3d Cir. 2008).  Further, the complaint does not assert any factual allegations against the other individual Commonwealth Defendants, except for possibly CHCA

Vihlidal.[5]  Instead, it merely alleges in conclusory fashion that they are liable because they are supervisors and because they all participated in a conspiratorial unconstitutional policy of greed. As already determined by the Court in one of Plaintiff's other civil actions, such unadorned and conclusory allegations do not state a claim under § 1983.  *See* 2:17-cv-217 (ECF No. 10 at 26-29, adopted by ECF No. 14).

In a similar vein, Plaintiff's assertion that he does not have to plead allegations of personal involvement because he has pleaded allegations of a conspiracy is without merit.  A § 1983 conspiracy claim can only be pursued if there is an underlying violation of § 1983.  *See Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015) (a conspiracy claim depends on whether a constitutional violation occurred in the first instance).  Thus, regardless of whether Plaintiff claims that Defendants engaged in a conspiracy, he has pleaded no facts suggesting that they were personally involved in violating his rights.  Absent such necessary allegations, the complaint fails to state a claim against these Defendants under § 1983.  *See Sweetman v. Borough of Norristown, Pa.*, 554 Fed. App'x 86, 90 (3d Cir. 2014) ("It may be that [Plaintiff] thinks that [Defendants] should be liable because they planned, wanted, or conspired to deprive him of his [constitutional] rights," but without "an actual deprivation of a constitutional right," § 1983 "does not provide a remedy.").  Further, even if Plaintiff had sufficiently alleged personal involvement on behalf of these Defendants, his unsupported and speculative allegations of conspiracy are not entitled to any weight, as they fail to "rise above general allegations and conjecture."  *Harvey v. Loftus*, 505 Fed. App'x 87, 90 (3d Cir. 2012); *see also Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991)

---

[5]  Because CHCA Vihlidal denied Plaintiff's ADA accommodation request, the Commonwealth Defendants "do not move at this point to dismiss the claims against her for lack of personal involvement."  (ECF No. 54 at 12).

("[I]t is a longstanding rule in the Third Circuit that a mere allegation … of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]."); *Brown v. Deparlos*, 492 Fed. App'x 211, 215 (3d Cir. 2012) (affirming dismissal of the plaintiff's conspiracy claim that was based upon a "conclusory allegation that prison employees, including guards and a nurse, agreed to act against him to deprive him of medical care").

As a result, the complaint fails to state a claim under §1983 against Defendants Oppman, Stover, DiAlesandro, Gilmore, and Mankey. Accordingly, these Defendants should be dismissed form the case.

### 2. *Monell* Claims

Although the complaint seeks to hold CCS liable under § 1983 pursuant to *Monell v. Dep't of Social Servs*., 436 U.S. 658 (1978), it contains no facts suggesting that CCS, through custom or policy, caused Plaintiff's alleged constitutional harm. Nor does the complaint allege facts suggesting that, in the absence of an affirmative policy, CCS turned a blind eye to an obviously inadequate practice that was likely to result in the violation of the prisoners' constitutional rights. *See Natale v. Camden Cty. Corr. Fac.*, 318 F.3d 575, 583-84 (3d Cir. 2003). As the Court has already determined in one of Plaintiff's other lawsuits, Plaintiff's vague and unsupported allegations that CCS engaged in an unconstitutional policy of misanthropic greed and that it should be held responsible for the actions of its employees are inadequate to state a claim under §1983. *See* 2:17-cv-217 (ECF No. 10 at 29-30, adopted by ECF No. 14). Thus, CCS should be dismissed from this action.

Moreover, there is no basis to allow Plaintiff to amend his pleading and substitute CCS for the applicable medical contractor, as he seems to request in his briefs. (ECF Nos. 63 at 2-5); *see*

*also* (ECF Nos. 69, 71) (abandoning reference to CCS and generically referring to the medical contractor as the "undisclosed Mental Health Care Provider" or "MHCP"). Plaintiff has already amended his complaint three times in this regard, and each time the only thing he changed was the name of the medical contractor. Accordingly, even if the Court afforded Plaintiff a fourth opportunity to substitute the medical contractor, the amendment would nevertheless be legally deficient, given the conclusory and speculative nature of his allegations.

The Court will now turn to the merits of Plaintiff's § 1983 claims for violations of the First, Eighth, and Fourteenth Amendments against and CHCA Vihlidal and Dr. Pillai, as they are the only Defendants requiring further discussion, in light of the above.[6]

### 3. Eighth Amendment Claim

Plaintiff claims that Dr. Pillai and CHCA Vihlidal violated his Eighth Amendment rights by denying or failing to accommodate his various requests to reduce the stress of his otherwise manageable OCD/HPPD disorder. As noted above, Plaintiff's requests for accommodation included the following: residue-free soap, a less stressful housing assignment or transfer to a lower security prison, permission to take showers at night, different laundry policies, and the right to dictate the order that prison officials search his cell. He also claims, without supporting factual detail, that Dr. Pillai completely denied him medical care.

Initially, the Court notes that Plaintiff's written requests to be provided a stress-free setting where he could have control over his environment were simply incongruent with the inescapable

---

[6] Even assuming *arguendo* that the complaint sufficiently pleaded allegations of personal involvement against the individual Commonwealth Defendants and sufficiently identified a custom or policy of CCS for purposes of stating a claim under *Monell*, the Court notes that under the following analysis, all of the § 1983 claims against these Defendants are deficient on the merits as well.

realty that he, as a convicted prisoner who was serving his sentence, "was subject to limitations and restrictions that would be intolerable if imposed against the general public." *Wilson v. Schillinger*, 761 F.2d 921, 925 (3d Cir. 1985). After all, the Eighth Amendment does not mandate comfortable prisons, *Rhodes v. Chapman*, 452 U.S. 337, 350 (1981), and only those deprivations denying a prisoner the minimal civilized measure of life's necessities are sufficiently grave to constitute a violation of the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The Court recognizes that "those minimal necessities include provision for basic hygiene." *Watson v. Sec'y of Pa. Dep't of Corr.*, 567 Fed. App'x 75, 79 (3d Cir. 2014) (citations omitted). In this case, however, Plaintiff is not claiming he was denied soap altogether. From the complaint's allegations, it is apparent that at all relevant times, Plaintiff not only had soap, but also had access to laundry detergent.[7] As a result, the Defendants' purported failure to provide Plaintiff with the specific soap of his choice or their failure to rectify Plaintiff's unclear complaints about the laundry policies for bedding and jackets did not amount to a denial of the minimal civilized measure of life's necessities. *Id.*; *see also Wojtaszek v. Dart*, 555 Fed. App'x 628 (7th Cir. 2014) (no Eighth Amendment violation when the detainee alleged that "his bedding was exchanged only one or two times per month, laundry service was available even less so, and he once went seven

---

[7] To the extent that Plaintiff takes issue with the fact that he had to pay for his soap when other indigent inmates were given the free "state soap," *see* (Compl. at ¶ 27), the Court of Appeals has held that such a requirement does not violate the constitution. *See Garcia v. Kimmell*, 381 Fed. App'x 211, 216-17 (3d Cir. 2010). Here, Plaintiff does not allege that he was indigent. Further, in light of the Court being familiar with Plaintiff's litigation in this district and having already calculated Plaintiff's initial partial filing fee in 2:15-cv-179, the Court notes that for the period of August 10, 2014 through February 5, 2015 (which overlaps with the time period in this case), Plaintiff had $2,326.56 deposited into his inmate account, with the average monthly deposit being $386.76. *See* 2:15-cv-179 (ECF No. 15 at n. 4). Thus, because Plaintiff was not an indigent prisoner, any dissatisfaction that he may have experienced from having to pay for his own soap is not legally cognizable.

weeks without laundry service for his uniform (and was not allowed to wash it himself)") (citing *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (lack of pillow and cleaning supplies, and infrequent laundry services were not unconstitutional)).

Likewise, Plaintiff's Eighth Amendment rights were not violated when he was not permitted night-time shower privileges. *See Gay v. Shannon*, 211 Fed. App'x 113, 116 (3d Cir. 2006) (restriction on showers was not an Eighth Amendment violation). Again, the Court notes that the complaint does not assert that Plaintiff was denied use of the showers altogether. He simply was not able to shower when he preferred. When considering that "[t]he Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers," *Whitney v. Varner*, 2016 WL 4988057, *5 n. 3 (M.D. Pa. 2016), Plaintiff's allegations about being denied preferential shower treatment are insufficient to state a claim.

In addition, Plaintiff's Eighth Amendment rights were not violated when Defendants denied or failed to accommodate his requests for cell transfer. During his confinement at SCI-Greene, Plaintiff did "not have a right to be placed in the cell of his choice," *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995), nor did he have a right to be transferred to a different institution. *Manuel v. Atkins*, 545 Fed. App'x 91, 93 (3d Cir. 2013) (prisoners do not have the right to be incarcerated at a particular facility).

Further, in light of the fact that "[m]aintaining institutional security and preserving internal order and discipline are essential goals" of any prison, Plaintiff had no constitutional right to tell the prison officials the order that they should search his cell, even if the prison officials' searches were "discomforting" to him and his OCD/HPPD symptoms. *See Bell v. Wolfish*, 441 U.S. 520, 540, 546-47 (1979). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape and other unauthorized activity." *Id.*

at 547. Thus, Defendants did not violate Plaintiff's constitutional rights when they denied or failed to accommodate his request to control the way that prison officials search his cell. This requested accommodation, if granted, would have made it "literally impossible" for the officials at SCI-Greene to accomplish their objectives. *Hudson v. Palmer*, 468 U.S. 517, 527 (1984).[8] Accordingly, any stress that Plaintiff may have endured from the denial of this request was not connected to a constitutional violation. *See Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010) (stress that is incidental to the prison officials' actions is not cognizable under the Eighth Amendment when their actions did not deprive the inmate of any basic human need).

Next, the complaint's vague assertion that Dr. Pillai denied him handicap-related medical services by not providing him any treatment for his OCD/HPPD is conclusory and, therefore, not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678 (naked assertions devoid of further factual enhancement are insufficient to state a claim); *Buoniconti v. City of Philadelphia*, 148 F.Supp.3d 425, 435 (E.D. Pa. 2015) (characterizing the plaintiff's unsupported allegation that the defendants failed to provide him medical care as being conclusory). Also, given that the complaint completely lacks any supporting factual detail here, the Court cannot infer that Dr. Pillai violated Plaintiff's Eighth Amendment rights simply because he subsequently determined, based on his

---

[8] The Court notes that in one of Plaintiff's other civil actions in this district, he claims that while he was confined at a different prison, SCI-Fayette, prison officials conducted a malicious and retaliatory shakedown of his cell, which resulted in, *inter alia*, the destruction of some of his property. *See* 2:16-cv-5 (ECF No. 36). In denying the Commonwealth Defendants' motion to dismiss in that case, the Court concluded that dismissal was not warranted at the pleading stage, given *Hudson's* statement that the Eighth Amendment prevents prison officials from "rid[ing] roughshod over inmates' property rights with impunity." *Hudson*, 468 U.S. at 526. The complaint in this case, however, does not contain any of the detailed factual allegations regarding the search of his cell that were alleged in the other case. Indeed, unlike the other case, there are no specific allegations regarding a search of his cell here.

own research after his release from prison, that SSRIs or other over-the-counter herbal supplements would have been appropriate for his OCD/HPPD symptoms. Notably, Plaintiff does not contend that he requested this medication or treatment from Dr. Pillai while he was confined at SCI-Greene. Moreover, even if he had requested this specific medication from Dr. Pillai, such allegations, without more, would still not violate the Eighth Amendment. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (mere disagreement as to the proper medical treatment is insufficient to establish a constitutional violation); *Ibarra-Villalva v. USP-Allenwood*, 213 Fed. App'x 132, 135 (3d Cir. 2007) ("even when accepting as true [the plaintiff's] allegation that his request for medication other than Prozac was ignored, this claim does not sufficiently allege a deprivation of a constitutional right").[9] The Court also agrees with Dr. Pillai that Plaintiff cannot otherwise hold her liable for the actions of others because she can only be held liable for her own misconduct, *Iqbal*, 556 U.S. at 677, and, as explained above, the complaint's speculative and conclusory assertions that she engaged in a conspiratorial policy of unconstitutional greed with the other Defendants is insufficient to state a claim.

As a result, the complaint's allegations, when viewed individually or taken together, fail to state an Eighth Amendment claim. Accordingly, this claim should be dismissed against CHCA Vihlidal and Dr. Pillai.

---

[9] The Court also notes that the complaint makes a stray reference that Plaintiff was denied medical care for his chronic swimmer's ear. *See* (Compl. at ¶ 23). This assertion, however, does not describe any of the circumstances surrounding the issue and is entirely undeveloped. Therefore, it constitutes a conclusory assertion that is insufficient to state a claim under the applicable pleading standard.

### 4. First Amendment Retaliation Claim

The complaint fails to state a claim for First Amendment retaliation, which consists of the following three elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) the plaintiff suffered an adverse action at the hands of prison officials; and (3) the plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001). The Court agrees with Defendants that the complaint fails to satisfy the second element, adverse action.

An adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal quotation marks omitted). To be actionable, the adverse action "need not be great" but "must be more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

Here, the complaint asserts that all of the Defendants retaliated against him for complaining of prison conditions in grievances and request slips. The retaliation, Plaintiff contends, took the form of Defendants "look[ing] for any weaknesses [Plaintiff] may divulge in phone calls, request slips, grievances, or to confidential informants placed in prison; to use the psychological stressors to traumatize [him] through adversarial psychology techniques . . . carr[ied] out under the guise of security." (Compl. at ¶ 33). These allegations, however, are not specific enough to state a plausible retaliation claim because they lack "all detail as to the time, place, or manner surrounding the alleged deprivation and it is entirely unclear from the allegations what level of involvement, if any," these Defendants had in such conduct. *Thomas v. Brinich*, 579 Fed. App'x 60, 62 (3d Cir. 2014). Simply put, the retaliatory conduct that Plaintiff accuses Defendants of engaging in is conclusory and speculative, and, accordingly, is insufficient to state a claim. *See Twombly*, 550

U.S. at 555 ("Factual allegations must be enough to raise a right to relief above a speculative level.").

Moreover, setting aside the conclusory and speculative nature of these allegations, such alleged conduct is not, as an objective matter, more than *de minimis*. Plaintiff does not allege that he was prevented from engaging in any activities or speech, *see Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000), disciplined, *see Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2017), or otherwise deterred from exercising his rights as a result of Defendants' alleged conduct. More importantly, such conduct would not, as an objective matter, deter a prisoner of ordinary firmness from exercising his constitutional rights.

Therefore, Plaintiff's First Amendment retaliation claim should be dismissed.

### 5. Fourteenth Amendment Equal Protection Claim

The Court agrees with Defendants that it is unclear what the basis for Plaintiff's Fourteenth Amendment equal protection claim is. The Equal Protection Clause of the Fourteenth Amendment requires that all people similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where the plaintiff is a member of a class that is not "suspect or quasi-suspect," or where the plaintiff is not a member of a class and is proceeding as a "class of one," courts look to whether there was a rational basis for the difference in treatment of similarly situated individuals. *Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 423 (3d Cir. 2000); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (the elements of a claim under a "class of one" theory are: (1) the defendant treated the plaintiff differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for difference in treatment). As noted above,

Plaintiff does not belong to a suspect or quasi-suspect class, notwithstanding his adamant contention to the contrary.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Olech*, 528 U.S. at 564 (internal alterations, marks, and citations omitted). But "[w]here there is no discrimination, there is no equal protection violation." *Tillman*, 221 F.3d at 424.

The complaint alleges no facts that Defendants intentionally discriminated against Plaintiff by treating him differently than similarly situated prisoners. *See Williams v. Sec'y Pa. Dep't of Corr.*, 566 Fed. App'x 113, 116 (3d Cir. 2014). The complaint, instead, merely asserts in conclusory fashion, without any supporting factual detail, that Defendants collectively violated his Fourteenth Amendment rights, as well as the rights of other mentally ill prisoners. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (general accusations and conclusory assertions that an equal protection violation occurred, absent specific allegations of differential treatment, are insufficient to state a claim). Plaintiff also takes issue with the fact that he did not receive special privileges at the prison, such as shower privileges and being entitled to a stress-free setting. However, failure to treat one inmate more favorably than other inmates or refusal to grant him special privileges that are not available to other inmates does not violate the equal protection clause. *See Ford v. Bureau of Prisons*, 2013 WL 5603587, *15 (M.D. Pa. 2013). As a result, there

are no well-pleaded facts in the complaint supporting an inference that Defendants violated

Plaintiff's rights under the equal protection clause of the Fourteenth Amendment.[10]

### 6. Title II of the ADA Claim

Plaintiff's claim under Title II of the ADA against the DOC fails as a matter of law. Title

II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual
> with a disability shall, by reason of such disability, be excluded from
> participation in or be denied the benefits of the services, programs,
> or activities of a public entity, or be subjected to discrimination by
> any such entity.

42 U.S.C. § 12132. From this language, the Court of Appeals has explained that to state a claim

under Title II, the plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he

was either excluded from participation in or denied the benefits of some public entity's services,

programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason

of his disability. *Brown*, 492 Fed. App'x at 215.

In conclusory fashion, the complaint "merely asserts that [the DOC] violated the ADA,"

but it does not "allege any facts that demonstrate that the alleged inadequate or improper medical

care [Plaintiff] received was *because of* his disability." *See id.* (emphasis added). The complaint

alleges, at most, that Plaintiff received inadequate treatment and accommodations for his

OCD/HPPD. *See* (Compl. at ¶ 37). Such allegations, without more, are insufficient to state a

---

[10]   The Court notes that in Plaintiff's brief in opposition, he contends that other inmates not housed
on the mental health block had access to the specific state soap he requested. (ECF No. 62 at 7).
This allegation is not contained in the complaint. But even if the Court were to consider it, the
Court would reach the same conclusion. When considering this new assertion, Plaintiff is
essentially claiming that everyone at the prison, including Plaintiff, had access to soap, but Plaintiff
was denied his top choice. Therefore, for all practical purposes, he was treated the same as
similarly situated inmates, notwithstanding that he was not given the exact kind of soap that he
desired. Accordingly, this does not rise to the level of a constitutional violation.

claim as a matter of law.  *See Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010)

("The ADA prohibits discrimination because of disability, not inadequate treatment for disability);

*Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (a prison's failure to attend to the medical

needs of its disabled prisoners or grant a requested special accommodation, absent factual

allegations of discrimination, does not violate the ADA).  Therefore, this claim should be

dismissed.[11]

### 7.  Allowing Amendment would be Futile

Because Plaintiff alternatively requests leave to amend his complaint if the Court

determines that it fails to state a claim, "amendment must be permitted in this context unless it

would be inequitable or futile."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.

2002).  Given the speculative nature of Plaintiff's claims in this action, the Court concludes that

allowing amendment here would be futile because the amended pleading would not state a

plausible claim.  *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  All of Plaintiff's

allegations in this case are based on his conspiracy theory that Defendants were involved in a state-

wide unconstitutional policy of misanthropic greed.  *See, e.g.,* Pl.'s Br. in Opp'n (ECF No. 62 at

27) ("Anyone who works for the DOC, or who contracts with them, is entering into a conspiracy,

and agreement to carry out this main unconstitutional policy.") (emphasis removed).  But he fails

---

[11]   The Court notes that Plaintiff asserts in his brief in opposition, but not in his complaint, that "regular prisoners" received medical care at the prison but handicapped prisoners did not.  (ECF No. 62 at 16).  Further, he asserts that the DOC denied him "access to the entirety of the prison's program of medical services" when it denied him "handicap-related accommodations that prisoners with physical disabilities received."  (*Id.* at 16-17).  Aside from being extrinsic and beyond the scope of the complaint, these assertions, even if considered by the Court, are completely unaccompanied by supporting factual detail.  Thus, they are conclusory and would not state a plausible claim for relief if Plaintiff was given a chance to amend his complaint to include these assertions.

to allege any facts at all to support this theory, and does not reference any facts in his brief in opposition that, if added to an amended complaint, would state a plausible claim for relief. Consequently, the Court should deny Plaintiff leave to file fourth amended complaint.[12]

## D. CONCLUSION

Based on the above, it is respectfully recommended that the Court grant Defendants' motions to dismiss (ECF Nos. 53, 55, 57) and dismiss Plaintiff's third amended complaint (ECF No. 51) with prejudice. In accordance with 28 U.S.C. § 636(b)(1)(B), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and Local Civil Rule 72.D.2, any party may file Objections to this Report and Recommendation on or before September 12, 2017. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell*, 637 F.3d at 193 n. 7.

---

[12] This conclusion is informed by the Court's familiarity with Plaintiff and his pleading/briefing style. Notably, in some of Plaintiff's other cases where he attempted to invoke this conspiracy theory relating to the secret unconstitutional policy of misanthropic greed and the Court ultimately concluded that he stated a claim under the applicable pleading standard, his pleadings also contained factual allegations suggesting that certain defendants committed a constitutional violation. *See* 2:16-cv-1303 (ECF No. 50) (concluding that the third amended complaint [ECF No. 33] contained well-pleaded allegations relating to the denial of a "No Soy" diet, notwithstanding its allegations at paragraph 56 that "[a]ll of the defendants acted . . . with nefarious intents . . . and put the unconstitutional policy of generating profits at the expense of prisoners' health and lives"); 2:17-cv-217 (ECF No. 10) (concluding that the amended complaint contained well-pleaded allegations of retaliatory placement of Plaintiff in the RHU, notwithstanding its implausible conspiracy theories asserting that the constitutional violations were carried out pursuant to unconstitutional policies of misanthropic greed involving former Pennsylvania Governors/Attorneys General Tom Corbett and Kathleen Kane, current Pennsylvania Governor Tom Wolf, Pennsylvania state Judges and Justices, Pennsylvania federal judges, various other high-ranking members of the Pennsylvania Attorney General's Office, and dozens of other individuals). Here, in contrast, the complaint contains virtually no well-pleaded allegations against any of the Defendants and Plaintiff admits in his briefs in opposition that his entire legal theory in this case is tied together by his implausible and speculative conspiracy theories.

Dated:  <u>August 29, 2017.</u>

By the Court:

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered users of CM-ECF